IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

STATE V. COLLINS

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

JOSEPH C. COLLINS, APPELLANT.

Filed February 6, 2024.    No. A-23-087.

Appeal from the District Court for Douglas County: JAMES M. MASTELLER, Judge. Affirmed.

Donald L. Schense, of Law Office of Donald L. Schense, for appellant.

Michael T. Hilgers, Attorney General, and Erin E. Tangeman for appellee.

RIEDMANN, ARTERBURN, and WELCH, Judges.

WELCH, Judge.

## I. INTRODUCTION

Joseph C. Collins appeals from his jury conviction for third degree assault on a peace officer, a Class IIIA felony, and the sentence imposed thereon. He contends that the district court erred in overruling his motion to suppress; in denying his motion to dismiss at the close of the State's case-in-chief and that the evidence was insufficient to support his conviction; in determining that he was a habitual criminal and imposing an excessive sentence; and that his trial counsel was ineffective. For the reasons stated herein, we affirm.

## II. STATEMENT OF FACTS

### 1. FACTS LEADING TO CHARGES

On May 22, 2020, Douglas County Sheriff's Deputy Kevin Clark and Village of Waterloo Police Officer Thomas Lamb responded to a report of a disturbance reported by Collins' mother,

- 1 -

who stated that Collins had gotten into a physical altercation with his brother. Collins' mother requested that police take Collins, who had a history of mental illness, into emergency protective custody. After the officers entered the residence with the consent of Collins' mother, Collins' brother stated that he wanted to press charges against Collins for assaulting him. The officers contacted Collins, who was in his bedroom, and asked him questions about Collins' altercation with his brother. Initially, the officers indicated that Collins was not going to be cited for third degree assault contingent upon him leaving the property. However, after Collins refused to voluntarily leave the property, the officers arrested Collins for assault. As they were escorting Collins out of the house, a struggle ensued that led to Collins being charged with two counts of third degree assault on a peace officer, both Class IIIA felonies. One of the counts alleged that Collins assaulted Deputy Clark and the other count alleged that Collins assaulted Officer Lamb. The information was later amended to add a habitual criminal allegation.

### 2. MOTION TO SUPPRESS

Prior to trial, Collins moved to suppress all statements, information gained, and property seized from him on May 22, 2020. Collins alleged that the officers unlawfully entered the residence without a warrant and that any statements made by him were made without his being informed of his *Miranda* rights and were not freely and voluntarily given.

Following a suppression hearing, the district court found that the officers were lawfully in the house, having received consent from the owner; that statements made by Collins during the initial interaction occurred during a preliminary crime scene investigation, as opposed to a custodial interrogation and that a reasonable person would have believed that he was free to leave or terminate the encounter with law enforcement; that there was no evidence that the officers utilized strong-arm tactics, deceptive stratagems, coercive measures, or threatened the use of force; and that Collins' subsequent arrest was supported by probable cause.

### 3. TRIAL

A jury trial was held over two days in November 2023. During the trial, Deputy Clark, Officer Lamb, and Collins testified to differing versions of the May 22, 2020, incident.

Deputy Clark testified that as he and Officer Lamb were escorting Collins out of the house, Collins shoved Officer Lamb while attempting to run off the porch to confront his brother. Deputy Clark testified that when he wrapped his right forearm around Collins' chest in an effort to restrain him, Collins bit him on the arm, telling him afterward that "it wasn't me that bit you, it was the anger."

Similarly, Officer Lamb testified that as he and Deputy Clark were escorting Collins out of the house, Collins began to "actively resist and twist trying to pull away from us." Officer Lamb stated that, as Collins began resisting, Collins pushed a shoulder into him. This push resulted in Officer Lamb tripping over a box, which caused his right knee to "basically [fold] up underneath" him and knocked him to the ground. Officer Lamb stated that after he fell to the ground, Collins turned and bit Deputy Clark on the forearm. The officers regained control of Collins and were able to handcuff him while Collins was lying on his stomach near the front porch of the residence. Although Collins continued to struggle, the officers were able to hold Collins until backup arrived.

Although Officer Lamb wore a body camera on the date of the incident, he was unable to retrieve video footage because the camera was damaged during the struggle with Collins.

In contrast, Collins testified that the officers had no reason to restrain him in the manner they did and that as a result of their use of excessive force, he received various bumps and bruises. He further testified that he bit Deputy Clark in self-defense because he was choking Collins and he could not breathe.

Following the trial, the jury convicted Collins of the third degree assault of Deputy Clark but found him not guilty of the third degree assault of Officer Lamb. Thereafter, at a combined enhancement hearing and sentencing hearing, the district court found that Collins was a habitual criminal and sentenced him to a mandatory minimum of 10 years' imprisonment to 11 years' imprisonment with credit for 327 days served. Collins has timely appealed to this court.

## III. ASSIGNMENTS OF ERROR

Collins' assignments of error, restated, are that: (1) the district court erred in overruling his motion to suppress; (2) the district court erred in denying his motion to dismiss at the close of the State's case-in-chief and that the evidence was insufficient to support his conviction; (3) the court erred in finding that he was a habitual criminal and imposing an excessive sentence; and (4) his trial counsel was ineffective.

## IV. STANDARD OF REVIEW

In reviewing a motion to suppress a statement based on its claimed involuntariness, including claims that law enforcement procured it by violating the safeguards established by the U.S. Supreme Court in *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), an appellate court applies a two-part standard of review. *State v. Connelly*, 307 Neb. 495, 949 N.W.2d 519 (2020). Regarding historical facts, an appellate court reviews the trial court's findings for clear error. *Id.* Whether those facts meet constitutional standards, however, is a question of law, which an appellate court reviews independently of the trial court's determination. *Id.*

Regardless of whether the evidence is direct, circumstantial, or a combination thereof, and regardless of whether the issue is labeled as a failure to direct a verdict, insufficiency of the evidence, or failure to prove a prima facie case, the standard is the same: In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the evidence admitted at trial, viewed and construed most favorably to the State, is sufficient to support the conviction. *State v. Price*, 306 Neb. 38, 944 N.W.2d 279 (2020).

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *Id.* An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id.*

Whether a claim of ineffective assistance of trial counsel may be determined on direct appeal is a question of law. *State v. Duncan*, 293 Neb. 359, 878 N.W.2d 363 (2016). In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only questions of law: Are the undisputed facts contained within the record sufficient to conclusively

determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *Id.*

## V. ANALYSIS

### 1. MOTION TO SUPPRESS

Collins first contends that the district court erred in overruling his motion to suppress because: his statements to law enforcement were obtained in violation of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966); his statements were the product of coercion and duress; and he was arrested without probable cause to believe that a crime had been committed because "[n]either witness at the hearing on the Motion to Suppress had observed a crime being committed." Brief for appellant at 21.

Collins' motion to suppress was primarily directed at suppressing his statements during the police investigation. But Collins directed his objection at trial, and most of his argument in the Brief for Appellant on appeal, to the officers' alleged improper questioning of him in his bedroom prior to the decision to arrest him and escort him out of the home, which was when the biting incident occurred.

However, at no point in his argument does Collins articulate what specific statements the court should have suppressed that were elicited from the questioning that took place in his bedroom, or how those statements are relevant to the charge, and his subsequent conviction, of the third degree assault of Deputy Clark. This lack of specificity is significant because of the nature of the charge for which Collins was convicted. That is, Collins was charged and convicted of assaulting Deputy Clark, not for the alleged assault of his brother which was the subject of the officers' questioning. As the State notes in its brief, "Here, Collins' statements to officers in his bedroom did not go to any element of the crime he was convicted of – Assault on an Officer in the Third Degree." Brief for appellee at 22.

In fact, Collins' only statement in the record that could relate to the charge for which he was convicted was his statement made after biting Deputy Clark that "it wasn't me that bit you, it was the anger." That statement was not made in Collins' bedroom, nor was it the product of any questioning by law enforcement. And, at trial, Collins' only objection to that statement was hearsay, which objection differed from the claims raised in his motion to suppress. Collins' hearsay objection at trial does not preserve any other objections raised in his motion to suppress which were not renewed during his trial. The Nebraska Supreme Court has long held that an objection, based on a specific ground and properly overruled, does not preserve a question for appellate review on some other ground not specified at trial. *State v. Lowman*, 308 Neb. 482, 954 N.W.2d 905 (2021).

As it relates to Collins' claim that the officers did not have probable cause to arrest him, the law is clear that regardless of the lawfulness of the arrest, an actor cannot resist arrest. See, *State v. Coleman*, 10 Neb. App. 337, 630 N.W.2d 686 (2002) (one may not justifiably resist an officer during pat-down search, regardless of whether pat-down is lawful and despite unconstitutionality of officer's pat-down, defendant was not justified in biting officer); Neb. Rev. Stat. § 28-904 (Reissue 2016) (resisting arrest includes use of physical force or violence against peace officer). As such, whether police had probable cause to arrest Collins is of no consequence to the eventual charge of third degree assault on a peace officer.

For these reasons, assuming without deciding that any error occurred in the district court's denial of Collins' motion to suppress statements made by Collins in his bedroom, any such error was harmless, because those statements were unrelated to the elements of the offense of third degree assault on a peace officer for which he was charged and convicted. Additionally, Collins failed to preserve any error associated with the district court's ruling on his hearsay objection at trial, because that objection differed from objections raised in his motion to suppress. Because Collins only assigned as error on appeal the court's overruling of his motion to suppress, he has not preserved for appellate review any error relating to the court's overruling of his hearsay objection at trial. Finally, any lack of probable cause to arrest does not provide a defense to the offense of third degree assault on a peace officer.

## 2. DENIAL OF MOTION TO DISMISS AND SUFFICIENCY OF EVIDENCE TO SUPPORT CONVICTION

Collins next assigns as error that the district court erred in denying his motion to dismiss at the close of the State's evidence and that the evidence was insufficient to support his conviction for the third degree assault of Deputy Clark. Collins argues that the evidence was insufficient to establish that he assaulted Deputy Clark or that he engaged in any conduct which resulted in an assault. Instead, he argues that the evidence unequivocally demonstrated that he used reasonable force to fend off Deputy Clark who was using unreasonable force against him.

As it relates to his claim that the district court erred in denying his motion to dismiss at the close of the State's case in chief, a defendant who moves for dismissal or a directed verdict at the close of the evidence in the State's case in chief in a criminal prosecution and who, when the court overrules the dismissal or directed verdict motion, proceeds with trial and introduces evidence, waives the right to challenge correctness in the trial court's overruling the motion for dismissal or a directed verdict but may still challenge the sufficiency of the evidence. *State v. Guzman*, 305 Neb. 376, 940 N.W.2d 552 (2020). Here, because Collins proceeded with the trial and presented evidence after the court denied his motion to dismiss made at the close of the State's case in chief, he has waived the right to challenge the court's ruling thereon. However, because his challenge to the sufficiency of the evidence to support his conviction has been properly preserved, we proceed to consider that claim.

When reviewing a criminal conviction for sufficiency of the evidence to sustain the conviction, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Stubbendieck*, 302 Neb. 702, 924 N.W.2d 711 (2019).

Here, Collins was convicted of third degree assault on a peace officer. See Neb. Rev. Stat. § 28-931 (Reissue 2016). Section 28-931 provides, in pertinent part:

> A person commits the offense of assault on an officer in the third degree if . . . [h]e or she intentionally, knowingly, or recklessly causes bodily injury . . . [t]o a peace officer [and] [t]he offense is committed while such officer . . . is engaged in the performance of his or her official duties. . .

Bodily injury is defined as "physical pain, illness, or any impairment of physical condition." Neb. Rev. Stat. § 28-109(4) (Reissue 2016).

At trial, the evidence was undisputed that Deputy Clark and Officer Lamb were dispatched to Collins' mother's home to investigate a physical altercation between Collins and his brother. During the investigation, Collins was asked to voluntarily leave the property, but after he refused to do so, the officers escorted him out of the property. Thus, both officers were clearly performing their official duties as peace officers. While escorting Collins out of the property, Collins began actively resisting and during the struggle, Collins bit Deputy Clark on the arm.

Although Collins does not dispute that he bit Deputy Clark on the arm, he argues that, when viewed as a whole, the evidence was insufficient to show that he engaged in conduct that resulted in an assault. Rather, he contends that he acted in self-defense to fend off unreasonable force being used by Deputy Clark. More specifically, Collins alleged that after Deputy Clark placed him in a chokehold, he was unable to breathe, and since his hands were handcuffed behind his back, he had to bite Deputy Clark so that Collins could breathe. We disagree.

Viewing the evidence in the light most favorable to the prosecution, there was sufficient evidence for the jury to find, beyond a reasonable doubt, that all the essential elements of the offense of third degree assault on a peace officer had been met. The evidence established that Collins knew Deputy Clark and Officer Lamb were performing their official duties and that Collins caused bodily injury by biting Deputy Clark resulting in pain. We further note that although Collins argues that he bit Deputy Clark in response to Deputy Clark's use of a chokehold which Collins contends was the use of unreasonable force, there was conflicting evidence presented at trial, with both Deputy Clark and Officer Lamb describing a completely different account of what led to the bite. And Deputy Clark's testimony specifically refuted Collins' claim that the officer's arm was around Collins' throat. Although there was conflicting evidence on this issue, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. *State v. Price*, 306 Neb. 38, 944 N.W.2d 279 (2020). Accordingly, when the evidence is viewed in the light most favorable to the State, we find that the jury could have reasonably found that Collins was not acting in self-defense and was guilty of the offense of third degree assault on a peace officer. This assignment of error fails.

### 3. HABITUAL CRIMINAL ENHANCEMENT AND EXCESSIVE SENTENCE

Collins assigns that the district court abused its discretion in imposing an excessive sentence. He contends that the district court erred in finding that he was a habitual criminal and in imposing an excessive sentence.

### (a) Habitual Criminal Enhancement

Collins first argues that the district court erred in finding that his prior convictions could be utilized for purposes of habitual criminal enhancement. He argues that the prior convictions used to support the habitual criminal enhancement were improperly used because the felonies the district court relied on were enhanced misdemeanor convictions and his sentences for the prior convictions did not result in Collins being committed to the Department of Corrections for a period of not less than a year.

Under Neb. Rev. Stat. § 29-2221(1) (Reissue 2016), the habitual criminal statute, provides in pertinent part:

> Whoever has been twice convicted of a crime, sentenced, and committed to prison, in this or any other state or by the United States or once in this state and once at least in any other state or by the United States, for terms of not less than one year each shall, upon conviction of a felony committed in this state, be deemed to be a habitual criminal and shall be punished by imprisonment in a Department of Correctional Services adult correctional facility for a mandatory minimum term of ten years and a maximum term of not more than sixty years . . .

Collins does not dispute that the triggering offense for the habitual criminal enhancement was his current Class IIIA felony for third degree assault on a peace officer. However, he argues that the district court erred in using his two prior convictions in determining that he was a habitual criminal. He argues that his prior convictions were enhanced misdemeanors which cannot be used for habitual criminal enhancement purposes and that the prior convictions did not result in sentences of a year or more because he "was released prior to ever serving at least a year on either of these two prior convictions." Brief for appellant at 25.

In support of his claim that his prior felonies were enhanced misdemeanor convictions that cannot be used for habitual criminal enhancement, Collins cites to *State v. Chapman*, 205 Neb. 368, 370, 287 N.W.2d 697, 698 (1980), *disapproved, State v. Abejide*, 293 Neb. 687, 879 N.W.2d 684 (2016), which stated that "offenses which are felonies because the defendant has been previously convicted of the same crime do not constitute 'felonies' within the meaning of prior felonies that enhance penalties under the habitual criminal statute." However, in *State v. Abejide*, 293 Neb. 687, 714, 879 N.W.2d 684, 703 (2016), the Nebraska Supreme Court disapproved of the aforementioned language in *Chapman*:

> The habitual criminal statute does not enhance the penalty for prior convictions; it is applied to the penalty for the triggering offense. If the penalty for the triggering offense is enhanced only pursuant to the habitual criminal statute, the fact that the penalty for one of the prior convictions was itself enhanced does not result in a double penalty enhancement of the triggering offense. As noted, the habitual criminal statute is focused on enhancing the penalty for the current conviction when the defendant has prior convictions of a certain type; the Legislature chose to describe that type of crime in terms of the sentence imposed rather than in terms of the classification of the prior offense as a felony.

The Nebraska Supreme Court specifically stated that *Chapman* was disapproved to the extent that it held that prior convictions which have discrete statutory schemes that already incorporated enhancement mechanisms could not serve as prior convictions under the habitual criminal statute. The court stated that, "[i]nstead, such convictions may be used as prior convictions under the habitual criminal statute as long as they meet the statutory requirement that such convictions resulted in terms of imprisonment for not less than 1 year." *State v. Abejide*, 293 Neb. at 714-15, 879 N.W.2d at 703.

As applied to the instant case, because Collins had prior convictions for which he was sentenced to terms of not less than 1 year, those convictions can be used for enhancement purposes even if they were the product of discrete statutory schemes that already incorporated enhancement mechanisms.

Further, regarding Collins' other argument, that his prior convictions did not result in sentences of imprisonment for a term "of not less than one year" because he had been "released prior to ever serving at least a year on either of these two prior convictions," the Nebraska Supreme Court rejected that argument in *State v. Drake*, 311 Neb. 219, 971 N.W.2d 759 (2022). In *Drake*, the Nebraska Supreme Court specifically rejected the argument that a defendant must have actually served 1 year on each of the sentences used for habitual criminal enhancement purposes:

> Pursuant to our reading of § 29-2221, for purposes of the words "committed to prison," the State needs to show only that the defendant has twice been ordered by the court to be committed for at least 1 year to a penal institution. The State is not required to produce evidence that [the defendant] actually served a full year in prison.

*State v. Drake*, 311 Neb. at 235, 971 N.W.2d at 773.

In the instant case, the State offered into evidence certified copies of Collins' prior convictions: second offense resisting arrest for which Collins was sentenced to 18 months' imprisonment; fourth offense driving under the influence (DUI) for which he was sentenced to 15 months' imprisonment; and driving during revocation for which he was sentenced to 1 year to 1 year and 1 day of imprisonment. Because Collins was sentenced to a period of not less than a year on each of these prior convictions, these convictions were sufficient for purposes of habitual criminal enhancement regardless of the duration of imprisonment that Collins actually served. This assignment of error fails.

(b) Excessive Sentence

Next, we address Collins' argument that his sentence was excessive. Collins argues that the district court failed to properly consider and weigh mitigating factors including his background, family, and that he had no prior violent criminal convictions.

In determining a sentence to be imposed, relevant factors customarily considered and applied are the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *State v. Stabler*, 305 Neb. 415, 940 N.W.2d 572 (2020). The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id*.

Here, Collins was convicted of third degree assault on a peace officer, a Class IIIA felony as enhanced by the determination that Collins was a habitual criminal. See § 28-931 (third degree assault on law enforcement officer); § 29-2221 (habitual criminal statute). Because the district court determined that Collins was a habitual criminal, his offense was punishable by a mandatory minimum of 10 years' imprisonment and a maximum term of 60 years' imprisonment. See

§ 29-2221. Collins' sentence of a mandatory minimum of 10 years' imprisonment to 11 years' imprisonment is within the applicable sentencing range.

During the sentencing hearing, the district court stated that it considered the presentence investigation report (PSR), police reports, victim impact statements, and the factors set forth in Neb. Rev. Stat. § 29-2260 (Reissue 2016). Because Collins refused to participate in the presentence investigation, limited information was available for inclusion in the PSR. At the time the PSR was completed, Collins was 34 years old and was unemployed. His criminal history included four convictions for DUI; two convictions each for attempted third degree assault, "resisting arrest, and operating a motor vehicle during 15-year license revocation; and one conviction each for violation of a protection order, minor in possession, disorderly conduct, obstructing a peace officer, carrying a concealed weapon, operating a motor vehicle during suspension, second offense aggravated DUI, criminal mischief, operating during revocation, no proof of insurance, and disturbing the peace. Collins had previously been sentenced to post-release supervision, from which he was unsatisfactorily released, and probation, which was revoked. The PSR noted that Collins "has an extensive criminal record and pending felony charges. His criminal record reflects a lack of respect for societal laws and a danger to society."

During the sentencing hearing, trial counsel asked the court to consider the fact that Collins was found not guilty on one of the counts of third degree assault on a peace officer; that Collins was badly bruised and was acting in self-defense; and that Collins had not caused any issues since being held in county corrections. Further, during allocution, Collins told the court that he never had a violent felony on his record; that he was being choked during the incident and had a natural reaction to not being able to breathe; and that he was taking responsibility, not making excuses for, and was sorry for, his actions.

Although Collins argues that the sentencing court failed to properly consider mitigating factors, the district court stated that it reviewed the presentence investigation report, which included information concerning all of the factors to be considered by a sentencing court. See *State v. Thomas*, 311 Neb. 989, 977 N.W.2d 258 (2022). The Nebraska Supreme Court has rejected the notion that a sentencing court is required to articulate on the record that it has considered each sentencing factor and to make specific findings as to the facts that bear on each of those factors. *Id.* There is no indication in the instant case that the district court improperly considered or weighed the sentencing factors.

Based on factors including that the sentence imposed was within the statutory sentencing range for Collins who was found to be a habitual criminal, the nature of the offense, his criminal history, and Collins' failure to participate in the presentence investigation, the district court did not abuse its discretion in the sentence imposed. This assignment of error fails.

### 4. INEFFECTIVE ASSISTANCE OF COUNSEL

Collins' final assignment of error is that his "right to effective assistance of counsel pursuant to Article I, Sections 3 and 11 of the Constitution of the State of Nebraska and the Sixth and Fourteenth Amendments of the Constitution of the United States were violated." Brief for appellant at 8.

Assignments of error on direct appeal regarding ineffective assistance of trial counsel must specifically allege deficient performance, and an appellate court will not scour the remainder of

the brief in search of such specificity and will not synthesize a specific assignment from the argument section of the brief of the party asserting the error. *State v. Mrza*, 302 Neb. 931, 926 N.W.2d 79 (2019).

Although Collins has numbered and argued specific claims of ineffective assistance in the argument section of his brief, this assignment of error fails to specifically allege deficient performance by trial counsel, as required by our appellate caselaw. See, e.g., *State v. Price*, 306 Neb. 38, 944 N.W.2d 279 (2020) (rejecting appellant's argument that he met *Mrza's* specificity requirement because specific allegations of ineffective assistance were separately numbered and discussed in argument section of his brief); *State v. Guzman*, 305 Neb. 376, 940 N.W.2d 552 (2020) (rejecting appellant's argument that he met *Mrza's* specificity requirement because his assignment of error stated that particular allegations of ineffective assistance would be set forth elsewhere in brief with more particularity and because in heading of his argument on issue, he identified particular deficiencies in all bold and capital letters). Because Collins failed to identify trial counsel's alleged deficiency in his assigned error, we do not address his claim.

## VI. CONCLUSION

Having considered and rejected Collins' assignments of error except for his claim of ineffective assistance of trial counsel which we find was not specifically alleged as required by Nebraska caselaw, we affirm Collins' conviction and sentence.

AFFIRMED.